# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| TEXAS FARMERS INSURANCE COMPANY as subrogee of Jose Prince and as subrogee of Jose Nieves | § § § § § § § § | Civil Action No. 4:16-CV-805<br>Judge Mazzant |
| v. | | |
| LOUISIANA-PACIFIC CORPORATION | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Louisiana-Pacific Corporation's Motion for Severance (Dkt. #15). After considering the relevant pleadings, the Court finds that the motion should be granted.

## BACKGROUND

Louisiana-Pacific Corporation ("LP") manufactures TechShield, a radiant barrier product used in home construction. The TechShield product reflects a roof's radiant heat away from a home's attic, leading to improved energy efficiencies and lowering utilities costs to homeowners. (Dkt. #15 at p. 2).

Both Jose Prince's ("Prince") and Jose Nieves' ("Nieves") residences had the TechShield product installed, which was designed, manufactured, marketed, sold, and distributed by LP. (Dkt. #7 at ¶ 7). Texas Farmers Insurance Company ("Farmers") insured both Prince's and Nieves' real and personal property (Dkt. #7 at ¶ 6). On May 23, 2015, lightning struck the Nieves residence in Round Rock, Texas. (Dkt. #15 at p. 3). The following day, lightning struck the Prince residence in Frisco, Texas during a different storm. Each house caught fire after being struck by lightning, causing substantial structural damage to the residences as well as damage to personal property. Farmers, in its amended complaint, alleges that the lightning strikes at both homes "energized" the

TechShield radiant barrier (Dkt. #7 at ¶ 9). Farmers also alleges that TechShield caused both fires because TechShield "failed to withstand and safely dissipate the lighting induced current," and "ignited a fire" in the homes' attic space that spread by igniting "nearby combustibles" in each attic (Dkt. 16 at pp. 1–2). Therefore, Farmers claims that LP's "improper design, manufacture, and marketing" of TechShield caused the damage. As a result of the home fires, Farmers, pursuant to insurance policies it had with both Prince and Nieves, paid them $432,477.50 and $468,419.16, respectively (Dkt. # 16 at p. 10).

On November 22, 2016, Farmers, as subrogee of both Prince and Nieves, submitted an amended complaint alleging strict products liability, negligence, and breach of implied warranties claims to recoup damages paid to Prince and Nieves as a result of the fires. (Dkt. #16). Farmers joined its claims under Rule 18 of the Federal Rules of Civil Procedure for each independent home fire. On December 23, 2016, LP filed this Motion to Sever the two claims brought by Farmers, arguing that Rule 21 of the Federal Rules makes bringing the claims together unwarranted (Dkt. #15). LP asserts that the Court should sever the two claims because they do not arise out of the same transaction or occurrence; do not share common issues of law or fact; will require different evidence and witnesses to prove them; and joining the claims together would be costly, inefficient, and prejudicial to LP (Dkt. #15). On January 5, 2017, Farmers filed a response (Dkt. #16). On January 12, 2017, LP filed a reply (Dkt. #17).

**LEGAL STANDARD**

Rule 21 of the Federal Rules of Civil Procedure establishes that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party," and "[t]he court may sever any claim against a party." Fed. R. Civ. P. 21. Under Rule 21, a "district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice." *Applewhite v. Reichhold*

*Chems.*, 67 F.3d 571, 574 (5th Cir. 1995). Trial courts have broad discretion to sever issues to be tried before it. *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). But courts will refuse to sever claims if "the court believes that it only will result in delay, inconvenience, or added expense." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014).

Severance under Rule 21 creates "two separate actions or suits where previously there was but one." *U.S. v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983). When a single claim is severed, it proceeds as a "discrete, independent action, and a court may render a final, appealable judgment in either one of the resulting actions." *Id.*

**ANALYSIS**

Farmers properly joined the Prince and Nieves claims under Rule 18. Rule 18 is a broad joinder rule, permitting parties to "join as many claims as it has against an opposing party." Fed. R. Civ. P. 18. However, not all claims properly joined under Rule 18 should proceed to a single trial. The official commentary of Rule 18 states, "it is emphasized that amended Rule 18(a) deals only with pleading," and "a claim properly joined as a matter of pleading need not be proceeded with together with the other claims if fairness or convenience justifies separate treatment." Fed. R. Civ. P. 18: Notes of Advisory Committee of Rule – 1966 Amendment. This district recognizes that severance is "especially appropriate" if trying claims together would "confuse the jury due to legal and factual differences." *Delce v. AMTRAK*, 180 F.R.D. 316, 319 (E.D. Tex. 1998); *see* Charles Alan Wright, et al., Fed. Prac. & P. § 1583 (April 2017) ("Rule 18(a) only deals with joinder as an initial matter; the district court may decide that for convenience, or to avoid prejudice, properly joined claims should be treated separately for trial purposes."). Thus, the Court finds fairness, efficiency, jury confusion, and possibility of prejudice the primary considerations in the severance analysis.

3

Farmer argues, and the Court recognizes, that courts often utilize Rule 21 to sever claims improperly joined under Rule 20 of the Federal Rules. However, the Court may utilize Rule 20 cases in determining whether to sever properly joined Rule 18 claims. Our district has maintained that Rule 21 "should be read in conjunction with Rules 18, 19 and 20," because Rule 21 contains no standards governing its operation, but is invoked when violation of another rule occurs. *Americans for Fair Patent Use, LLC v. Sprint Nextel Corp.*, No. 2:10-CV-237-TJW, 2011 WL 98279, at *2 (E.D. Tex. Jan. 12, 2011). And the Fifth Circuit has held that "district courts have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiff's claims." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010). Therefore, the Court finds it appropriate to utilize Rule 20 cases in determining whether to sever properly joined claims to the extent they weigh on fairness, judicial economy, and prejudice.

LP's motion for severance asserts multiple reasons as to why trying the Prince and Nieves claims together would cause unfairness, inconvenience, and prejudice to LP. First, LP asserts that vastly different witnesses and documentary proof will be necessary to adjudicate each claim. As stated above, this Court has broad discretion to sever claims when "different witnesses and documentary proof would be required" to prove each claim, and severance is appropriate if trying the claims together would "confuse the jury due to legal and factual differences." *Acevedo*, 600 F.3d at 522; *Delce*, 180 F.R.D. at 319. District courts in the Fifth Circuit have considered such factors when deciding to grant motions to sever. For example, in *Guilbeau*, the Western District of Louisiana considered a motion to sever medical patients' claims against medical product manufacturers. *See Guilbeau v. Wyeth, Inc.*, No. 09-1652, 2010 WL 2216710, at *2 (W.D. La. May 28, 2010). The court concluded that because each plaintiff's "witnesses would necessarily

4

include the individual plaintiff and all of his or her physicians, healthcare facility representatives and fact witnesses, undue prejudice and unnecessary jury confusion would likewise occur." *Id.*

Here, each claim will likewise involve the individual homeowner, vendors that conducted repairs to each home, investigators who examined each individual home, and other witnesses with knowledge unique to only one of the claims. For example, seven distinct companies have information unique to the Nieves claim, and ten distinct companies have information unique to the Prince claim (Dkt. #15 at p. 8). While Farmers contends that all of the witnesses in these companies are damages witnesses, the damages Prince and Nieves suffered will require entirely different calculations resulting from claim-specific testimony. If tried together, the jury would have to consider extensive testimony regarding the conditions unique to each house before the fire, the resulting structural damage unique to each house, property damage unique to each claim, as well as living expenses unique to both Prince and Nieves, which is likely to cause confusion. *Guilbeau*, 2010 WL 2216710, at *2. Additional witnesses likely to testify in this case include: the Round Rock and Frisco Fire Departments, the cause and origin investigators who examined each house, the claims adjusters for both Prince and Nieves, as well as Prince and Nieves themselves. These witnesses will only be able to testify regarding the specific fire in which they were involved. This will result in even more technical, claim-specific testimony that the jury will have to distinguish between each claim throughout. Farmers asserts that the cause and origin expert's testimony will include "common indicators" at both fire scenes unique to radiant barrier fires generally. However, Farmers must still use its witnesses and experts to prove that TechShield was the cause in fact of each individual fire to prevail on their strict products liability and negligence claims. *See Gill v. Ethicon Inc.*, No. 00-2042, 2001 WL 36649468 (W.D. La. Aug. 1, 2001) (granting severance because other factors besides defendant's product may have caused each individual injury).

Finally, the houses were constructed in different areas of Texas and nearly a decade apart from one another. This means, as LP asserts, that the parties must call different witnesses to discuss issues related to the building materials used in each house, and what relation those materials may have to the cause of each fire.

Farmers does provide witnesses that will be able to testify regarding both fires: a single engineering expert who investigated both fires, and current and former employees of LP. However, as LP correctly states, this witness testimony is likely to differ for each claim. Under circumstances where some "witnesses may be common," courts routinely sever claims when "their testimony will differ between the claims." *Jones v. Demantic Corp.*, No. 3:13-cv-1334-O, WL 12129709, at *3 (N.D. Tex. Nov. 8, 2013). Because each claim requires a fact-intensive analysis, especially regarding the cause in fact of the fires and the resulting damages at each house, each witness will have to testify about causation and damages as they relate to the specific fire of which they have knowledge.

In addition to the varying witnesses that will necessarily have to testify regarding each claim, a large amount of documentary evidence will be unique to each claim. For example, fire department incident reports, lightning reports, insurance policies, blueprints, and photographic evidence will be unique to each fire and to each house (Dkt. #15 at p. 9). While Farmers argues that they will be seeking and relying on the same evidence to prove their strict products liability claims, the only source of that evidence is LP itself. As other federal courts have held in products liability cases, "while much of the [defendant]-related witnesses and documents . . . will overlap between plaintiff's claims, none of the witnesses and documents related to the plaintiff's individualized circumstances will overlap." *Boles v. Eli Lilly and Co.*, No. 1:15-cv-00351-JMS-DKL, 2015 WL 6132478, at *9 (S.D. Ind. Oct. 19, 2015). Presenting "varied facts" for each claim

will "cause confusion and outweigh any benefit received from the judicial economy of solving a few common questions." *McGrew v. Howmedica Osteonics Corp.*, No. 14-cv-430-SMY-PMF, 2015 WL 159367, at *3 (S.D. Ill. Jan. 13, 2015).

Prejudice considerations also weigh in favor of severance. When determining whether to sever claims, district courts in the Fifth Circuit have found prejudice when a single defendant must defend against "multiple claims, with different factual scenarios, in one trial." *See Rohr v. Metro Ins. & Cas. Co.*, No. 06-10511, 2007 WL 163037 (E.D. La. Jan. 17, 2007) (finding defendant would be prejudiced if claims tried together, because plaintiff must prove "the particulars" of each claim, "the condition of the property before" the accident, "the cause of the damage," "and the extent of the damage"). As in *Rohr*, LP would be prejudiced if it were forced to defend against both of Farmers claims together. Defending against these two claims in one trial is prejudicial to LP, because Farmers must prove "the particulars" of each claim. *Id.* at *3. This includes the condition of the houses before the accidents, the causes of the fires, and the extent of the resulting damages incurred by Prince and Nieves. The court in *Rohr* also noted that any "conservation of judicial resources" are "outweighed by the burden imposed" on the defendant because "each property owner is uniquely situated." *Id.* Here, Prince and Nieves are "uniquely situated," such that the burden imposed on LP in simultaneously defending against each claim outweighs any conservation of judicial resources. *See id.* Furthermore, Farmers admits that they may not use "the cause of the fire at the Prince house to demonstrate the cause of the fire at the Nieves house" (Dkt. #16 at p. 12). But if the jury must evaluate whether TechShield was the cause of the Prince fire without taking into consideration that the Nieves house also had TechShield and caught fire, it will further confuse the jury.

Furthermore, Farmers' claims are partly based on how TechShield interacted with "nearby combustibles" at each house. This provides another wrinkle in Farmers' causation argument that must be analyzed on a claim-specific basis, which prejudices LP by having to defend against separate, particularized causation arguments in a single trial. *Rohr*, 2007 WL 163037 at *3. If one claim's causation argument is stronger than the other, the other claim may receive an improper benefit by association with the stronger claim. Also, TechShield was installed in the Nieves house before 2010, when LP first received notice of a possible connection between lightning and TechShield, which could also be confusing and prejudicial. This is because, as Farmers alleges in their complaint, whether LP "knew or should have known" of alleged defects in TechShield is a key issue in the case (Dkt. #7 at p. 5; Dkt. #16 at p. 10). Defending against another issue that is specific and particularized to each claim in one trial adds to the prejudice against LP. Because the TechShield in Nieves' house was installed before LP was aware of a connection between TechShield and lightning, LP must put on unique defenses to each claim regarding whether they "knew or should have known" of defects in TechShield. Farmers' argument that LP "knew or should have known" of a defect will be stronger with regard to the Prince claim, because the TechShield in Prince's house was manufactured after LP received notice.

In sum, there are multiple issues that are unique to each claim Farmers brings, especially as it pertains to causation, damages, and whether LP "knew or should have known" of defects in TechShield. Defending against multiple issues that are unique to each claim in a single trial setting is both prejudicial to LP, and confusing to the jury. Therefore, principles of fairness and equity weigh in favor of severance.

Farmers alleges that severing the claims would cause more prejudice to them as opposed to LP, because they would be "forced to litigate these common issues of law and fact on multiple

fronts" (Dkt. #16 at p. 14). They also claim that "increased costs and inefficiencies" would result from "multiple lawsuits spread out among different federal courts in the State of Texas," due to discovery issues, and the possibility of "inconsistent rulings and adjudication of claims." (Dkt. #16 at p. 11). However, as discussed above, only one source of discovery holds the evidence that Farmers alleges would be burdensome to conduct twice, and that is LP itself. This is not enough to deny severance. *Boles*, 2015 WL 6132478, at *9; *McGrew*, 2015 WL 159367, at *3. Also, this case is unlike other severance cases where the defendant seeks to sever multiple claims among different parties that would result in a number of new cases spread throughout the country. If such were the case, Farmers' judicial efficiency arguments would have more merit. *See Knapper v. Safety Kleen Systems, Inc.*, No. 9:08-CV-84-TH, 2009 WL 909479 (E.D. Tex. Apr. 3, 2009) (denying severance where severance would result in suits against eight separate defendants that would take place in six different district courts). Instead, this is merely severance of a single claim. Furthermore, because LP has not filed a motion to transfer venue, and because adjudicating products liability and negligence claims is inherently fact specific, Farmers' fears of inconsistent rulings and adjudication of claims are premature.

## CONCLUSION

The Court finds severance under Rule 21 appropriate because trying Farmers' claims together would confuse the jury and cause prejudice to LP. The prejudice and confusion outweighs the relatively minor benefit of trying the two claims together for judicial economy.

It is therefore **ORDERED** that LP's Motion for Severance (Dkt. #15) is hereby **GRANTED** and that the claims pertaining to subrogor Jose Prince and subrogor Jose Nieves be **SEVERED** into separate causes of action. Plaintiff shall pay the filing fee for this case within

fourteen (14) days of this order issuing to avoid having the severed cause of action dismissed with prejudice.

**SIGNED this 6th day of June, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE